

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

AUG 2 3 2010

JAMES N. HATTEN, Clerk
By: _____
Deputy Clerk

ORIGINAL

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

### ATLANTA DIVISION

| | |
|---|---|
| ANGEL FRANCISCO CASTRO-TORRES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case 1:10-CV-2636 |
| | ) |
| JEREMIAH M. LIGNITZ | ) |
| | ) |
| and | ) |
| | ) |
| BRIAN J. WALRAVEN, in their individual | ) |
| capacities, | ) |
| | ) |
| | ) |
| Defendants. | ) |
| | ) |

## COMPLAINT

## PRELIMINARY STATEMENT

1.     This federal civil rights lawsuit arises from the unwarranted

stop, arrest and brutal assault of an unarmed Latino bicyclist by Officers of

the Cobb County Police Department.

2.     On March 26, 2010, the Defendant officers stopped Plaintiff

Angel Francisco Castro-Torres ("Mr. Castro") as he rode a bicycle in Cobb

County, Georgia. Defendants observed that Mr. Castro was Hispanic before they stopped his bicycle. Defendants demanded identification from Mr. Castro, questioned his immigration status, and arrested him. In the course of this arrest, the officers brutally assaulted Mr. Castro, breaking bones in his nose and left eye socket. Upon arrest, Defendants took Mr. Castro to the Cobb County Adult Detention Center ("Cobb County Jail"), where he was subjected to immigration questioning. Mr. Castro was detained at the Cobb County Jail for over four months and was subsequently transferred to the custody of United States Immigration and Customs Enforcement (ICE) for placement in removal proceedings.

3.     The Cobb County Jail is the primary jail housing persons arrested by Officers of the Cobb County Police Department. While Cobb County Police Department patrol officers, like the Defendants, lack the authority to enforce federal immigration law, the jail is administered by the Cobb County Sherriff. The Cobb County Sherriff's Office is authorized, pursuant to a Memorandum of Agreement with ICE under 8 U.S.C. § 1357(g); INA § 287(g) ("287(g) immigration authority"), to interrogate and process for immigration violations any noncitizen who comes into contact with designated jail staff after arrest.

2

4.     Since the February 2007 effective date of the Cobb County Jail's 287(g) immigration authority, more than 4,500 noncitizens have been removed from the United States after arrest in Cobb County.  Very few of Cobb County's noncitizen detainees contested the criminal charges against them or the bases for the arrests which brought them to the 287(g) facility, before they were removed from the United States.

5.     Upon information and belief, Defendants knew of the Cobb County Jail's 287(g) immigration authority when they stopped and arrested Mr. Castro and took him to the Cobb County Jail.

6.     Upon information and belief, the Defendants stopped and arrested Mr. Castro because of his Latino race and ethnicity, from which they inferred that he was a noncitizen.

7.     On August 10, 2010 the Cobb County State Court granted Mr. Castro's motion to suppress evidence on the grounds that Defendants acted unconstitutionally in stopping him without any reasonable suspicion of criminal activity.  The Court dismissed all criminal charges brought against Mr. Castro under an order of *nolle prosequi*.

8.     Mr. Castro now seeks redress for the Defendants' violations of his constitutional rights and for his false imprisonment.

## JURISDICTION

9.     This action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983, and the laws of the state of Georgia. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343 and 1367.

## VENUE

10.   Venue is proper pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events giving rise to the claims occurred in the Northern District of Georgia.

## PARTIES

11.    At all times relevant to this action, Plaintiff Angel Francisco Castro-Torres ("Mr. Castro") was a "person within the jurisdiction" of the United States for the purposes of 42 U.S.C. § 1983.

12.    At all times relevant to this action, Mr. Castro was a "person" for the purposes of the Fourth Amendment to the United States Constitution.

13.   Defendant Jeremiah M. Lignitz ("Defendant Lignitz") was, at all times relevant to this action, a law enforcement officer employed by the Cobb County Police Department.

14.   At all times relevant to this action, Defendant Lignitz was a person acting under color of state or local law.

15.   Defendants Lignitz is sued in his individual capacity.

16.   Defendant Brian J. Walraven ("Defendant Walraven) was, at all times relevant to this action, a law enforcement officer employed by the Cobb County Police Department.

17.   At all times relevant to this action, Defendant Walraven was a person acting under color of state or local law.

18.   Defendant Walraven is sued in his individual capacity.


## FACTUAL ALLEGATIONS

19.   On the afternoon of March 26, 2010, Plaintiff Angel Francisco Castro-Torres ("Mr. Castro") was traveling south along South Cobb Drive in Cobb County, Georgia on a bicycle.

20.   As Mr. Castro traveled south on South Cobb Drive, he passed in front of Defendants Lignitz's and Walraven's marked patrol car, which was waiting at a red light in an eastbound lane of a road intersecting South Cobb Drive.

21.   Defendants noted that Mr. Castro was Hispanic as he rode past

them.

22.    Mr. Castro was not known to Defendants.

23.    Defendants had no information as to any prior conduct or misconduct on Mr. Castro's part.

24.    Mr. Castro was unarmed.

25.    At no time relevant to this action did Defendants have any reason to believe that Mr. Castro might have been armed, dangerous or about to commit a crime.

26.    Defendants turned to follow Mr. Castro south on South Cobb Drive.

27.    Defendants motioned to Mr. Castro to stop his bicycle and pulled their car into the intersection of South Cobb Drive and Old Concord Road, where Mr. Castro stopped his bicycle, in compliance with Defendants' directions. This March 26, 2010 encounter, and subsequent questioning are referred to hereinafter as "the *Terry* stop."

28.    At no time relevant to this action did Defendants activate their marked patrol car's warning lights.

29.    Defendants purport to have made the *Terry* stop because Mr. Castro failed to yield to traffic.

30.    At no time relevant to this action did Mr. Castro fail to yield to traffic.

31.    Upon information and belief, Defendants stopped Mr. Castro because of his Latino race and ethnicity.

32.    Upon information and belief, Defendants stopped Mr. Castro because they inferred that he was a not a U.S. citizen.

33.    Immediately upon stopping him, Defendants informed Mr. Castro that he was not free to move.

34.    After informing Mr. Castro that he was not free to move, Defendants initiated questioning.

35.    Defendants did not question Mr. Castro regarding any failure to yield, nor did they mention any failure to yield to him in the course of the *Terry* stop.

36.    Defendants questioned Mr. Castro about his identity and about whether he had immigration documents.

37.    Upon information and belief, Defendants extended their questioning and detention of Mr. Castro because of his Latino race and ethnicity.

38.    Upon information and belief, Defendants extended their

questioning and detention of Mr. Castro because they inferred that he was not a U.S. citizen.

39.     Defendants questioned Mr. Castro in English without Spanish interpretation.

40.     Mr. Castro, a native Spanish-speaker with limited English proficiency, attempted to comply with Defendants' questioning.

41.     During the *Terry* stop, Defendants became aware of Mr. Castro's very limited English language ability.

42.     Defendants' interrogated Mr. Castro in the English language, even after they were aware of Mr. Castro's very limited English language ability.

43.     Upon information and belief, Defendants did not attempt to obtain or provide interpretation during the *Terry* stop.

44.     Although Georgia and relevant localities do not have a "stop and identify" statute, Defendants purport to have detained Mr. Castro due to identification purposes.

45.     Mr. Castro identified himself upon Defendants' request and did not withhold relevant identity information.

46.     Mr. Castro provided Defendants with both his correct age and

his correct date of birth.

47.     Defendants forced Mr. Castro against their patrol car. As Defendant Walraven held Mr. Castro, Defendant Lignitz struck Mr. Castro in the face with his forearm or elbow.

48.     Emergency Medical Technicians from MetroAtlanta Ambulance responded to the scene.

49.     Mr. Castro suffered fractures to his left eye socket and to his nose as a result of Defendants' assault on him.

50.     Mr. Castro suffered damage to a portion of his inferior rectus muscle as a result of Defendants' assault on him.

51.     Mr. Castro suffered restrictive movement in the upward gaze of his left eye as a result of Defendants' assault on him.

52.     Mr. Castro suffered double vision as a result of Defendants' assault on him.

53.     Defendants arrested Mr. Castro and took him to the Cobb County Adult Detention Center.

54.     Defendants arrested Mr. Castro without a warrant.

55.     Upon information and belief, Defendants arrested Plaintiff because of his Latino race and ethnicity.

56.    Upon information and belief, Defendants arrested Plaintiff because they inferred that he was a noncitizen.

57.    Defendants obtained a warrant after Mr. Castro's arrest.

58.    The only criminal or traffic charges brought against Mr. Castro as a result of the March 26, 2010 *Terry* stop were two counts of misdemeanor grade obstruction or hindering of law enforcement officers pursuant to O.C.G.A. § 16-10-24(a).

59.    Mr. Castro spent over four months incarcerated as a pre-trial detainee in the Cobb County Jail, awaiting an opportunity to demonstrate his innocence.

60.    On April 8, 2010, after thirteen days enduring pain from Defendants March 26, 2010 assault on him, Mr. Castro underwent surgery at Northwest Oral and Maxillofacial Surgery to repair the blow-out fracture to the floor of his left orbital socket.

61.    Mr. Castro's injuries have caused lasting damage, pain, suffering and distress.

62.    On August 10, 2010, the Cobb County State Court heard Mr. Castro's motion to suppress evidence in the criminal case on the grounds that the *Terry* stop and his detention were unconstitutional.  Both Defendants

were lawfully subpoenaed to attend and provide testimony at the August 10, 2010 hearing. Neither Defendant complied with the lawful subpoena compelling their attendance and testimony at the August 10, 2010 suppression hearing.

63.  On August 10, 2010, Chief Judge Toby Progers granted Mr. Castro's motion to suppress evidence which was based on the unconstitutional *Terry* stop and detention.

64.  All criminal charges against Mr. Castro were dismissed upon entry of an order of *nolle prosequi* dated August 10, 2010.

65.  Mr. Castro faces immigration proceedings as a result of his improper March 26, 2010 arrest.

## CAUSES OF ACTION

## COUNT I

### *Terry* Stop Without Reasonable Suspicion

### 4th Amendment; 42 U.S.C. § 1983

66.     Plaintiff re-alleges and incorporates by reference the allegations stated in ¶¶ 11 - 65 above.

67.     Defendants made the *Terry* stop without reasonable suspicion.

68.     Plaintiff had the right under the Fourth Amendment to the United States Constitution, as applied to states through the Fourteenth Amendment, to be free from unreasonable seizures.

69.     Defendants' actions constituted a seizure of Plaintiff's person.

70.     Defendants' seizure of Plaintiff's person was unreasonable.

71.     Defendants' actions subjected Mr. Castro to a deprivation of his rights as secured by the Fourth Amendment.

72.     The law was clearly established prior to March 26, 2010, that a *Terry* stop executed without reasonable suspicion constitutes an unreasonable seizure in violation of the Fourth Amendment of the United States Constitution.

73.     Plaintiff was injured by Defendants' unconstitutional seizure,

which deprived Plaintiff of his rights secured by the Fourth Amendment.

74.     Defendants' conduct of subjecting Plaintiff to an unconstitutional seizure without reasonable suspicion was motivated by evil motive or intent, or was recklessly or callously indifferent to the Plaintiff's Fourth Amendment rights.

75.     Plaintiff suffered mental and emotional distress as a result of Defendants' unconstitutional seizure.

## COUNT II

### Extension of Detention Without Probable Cause

### 4th Amendment; 42 U.S.C. § 1983

76.     Plaintiff re-alleges and incorporates by reference the allegations stated in ¶¶ 11 - 65 above.

77.     Defendants' *Terry* stop of Mr. Castro was not, at its inception, a valid stop.

78.     Defendants' *Terry* stop of Mr. Castro lasted approximately twenty-five minutes.

79.     Defendants' investigatory detention of Mr. Castro was unreasonable in length and scope, in light of its purported original purpose

of redressing a failure to yield.

80.     Defendants detained Mr. Castro beyond the time period reasonably necessary to address the failure to yield which Defendants offer to justify the *Terry* stop.

81.     Defendants questioned Mr. Castro regarding matters exceeding the permissible scope of investigation of Mr. Castro's alleged failure to yield.

82.     Defendants' questions which were unrelated to Mr. Castro's alleged failure to yield unreasonably prolonged Mr. Castro's detention.

83.     Defendants' extension of detention and questioning beyond the time and scope reasonably necessary to redress Mr. Castro's alleged failure to yield were not justified by probable cause and/or reasonable suspicion of any other criminal activity.

84.     Defendants' extension of detention and questioning beyond the time and scope reasonably required by Mr. Castro's alleged failure to yield was not consensual.

85.     Plaintiff had the right under the Fourth Amendment to the United States Constitution to be free from unreasonable seizures.

86.     Defendants' actions constituted a seizure of Plaintiff's person.

87.    Defendant's seizure of the Plaintiff's person was unreasonable.

88.    Defendants' actions subjected Mr. Castro to a deprivation of his rights as secured by the Fourth Amendment.

89.    Plaintiff was injured by Defendants' unconstitutional seizure, which deprived Plaintiff of his rights secured by the Fourth Amendment.

90.    Defendants' conduct of subjecting Plaintiff to an unconstitutional seizure was motivated by evil motive or intent, or was recklessly or callously indifferent to the Fourth Amendment rights of Plaintiff.

91.    Plaintiff suffered mental and emotional distress as a result of Defendants' unconstitutional seizure.

## COUNT III

### Arrest Without Probable Cause

### 4th Amendment; 42 U.S.C. § 1983

92.    Plaintiff re-alleges and incorporates by reference the allegations stated in ¶¶ 11 - 65 above.

93.    At the outset of the *Terry* stop, Defendants told Mr. Castro that he was not free to leave.

94.   At no point during the *Terry* stop was Mr. Castro told that he was free to leave.

95.   Throughout the *Terry* stop, Mr. Castro believed that he was not free to leave the scene.

96.   Defendants arrested Mr. Castro without a warrant.

97.   Defendants arrested Mr. Castro without probable cause to believe that Mr. Castro had committed, was committing or was about to commit an offense.

98.   Defendants' arrest of Mr. Castro was not objectively reasonable under the totality of the circumstances.

99.   The facts and circumstances within the Defendants' knowledge at the time of arrest, of which they had reasonably trustworthy information, would not have caused a prudent person to believe, under the circumstances shown, that Mr. Castro had committed, was committing or was about to commit an offense.

100.   Plaintiff had the right under the Fourth Amendment to the United States Constitution, as applied to states through the Fourteenth Amendment, to be free from unreasonable seizures.

101.   Defendants' actions constituted a seizure of Plaintiff's person.

102.  Defendant's seizure of the Plaintiff's person was unreasonable.

103.  Defendants' actions subjected Mr. Castro to a deprivation of his rights as secured by the Fourth Amendment.

104.  Defendants' conduct of subjecting Plaintiff to an unconstitutional seizure was motivated by evil motive or intent, or was recklessly or callously indifferent to the Fourth Amendment rights of Plaintiff.

105.  Plaintiff was injured by Defendants' unconstitutional seizure, which deprived Plaintiff of his rights secured by the Fourth Amendment.

106.  Plaintiff suffered mental and emotional distress as a result of Defendants' unconstitutional seizure.

## COUNT IV

### False Imprisonment – O.C.G.A. § 51-7-20

107.  Plaintiff re-alleges and incorporates by reference the allegations stated in ¶¶ 11 – 65 above.

108.  Defendants arrested Mr. Castro without a warrant.

109.  Defendant Lignitz obtained a warrant after the arrest.

110.  During the *Terry* stop, Mr. Castro complied with all lawful

17

requests for information to the extent legally required.

111.   At no time did Mr. Castro commit any offense in the presence of the Defendants.

112.   Plaintiff did not commit any offense within the immediate knowledge of Defendants.

113.   At no time did Mr. Castro endeavor to escape from Defendants.

114.   It was not likely that a failure of justice would occur for want of a judicial officer to issue a warrant.

115.   Mr. Castro was detained for at least two and one half hours after his arrest before Defendant Lignitz obtained a criminal warrant.

116.   Mr. Castro was incarcerated in the Cobb County Jail for more than four months, awaiting trial on the charges, dismissed under order of *nolle prosequi*, which formed the basis for Defendants' arrest of him.

117.   Defendants unlawfully detained Plaintiff's person for a significant length of time.

118.   Plaintiff was deprived of his personal liberty as a result of Defendants unlawful detention of his person.

119.   Mr. Castro was seriously injured, suffering fractures to his nose and left eye socket, as Defendants unlawfully detained his person.

120. Mr. Castro was seriously injured, suffering damage to a portion of his inferior rectus muscle, as Defendants unlawfully detained his person.

121. Mr. Castro was seriously injured, suffering restricted motion in the upward gaze of his left eye, as Defendants unlawfully detained his person.

122. Mr. Castro was seriously injured, suffering double vision, as Defendants unlawfully detained his person.

123. Mr. Castro's injuries have required one surgery to date.

124. Plaintiff suffered mental and emotional distress as a result of his false imprisonment.

125. Plaintiff suffered significant damages as a result of his false imprisonment by Defendants.

126. Defendants acted maliciously in effecting Plaintiff's false imprisonment.

127. Defendants' conduct in effecting Plaintiff's false imprisonment showed willful misconduct, malice, wantonness, oppression, an entire want of care and conscious indifference to the consequences of their conduct.

## COUNT V

### Excessive Force – 4th Amendment; 42 U.S.C. § 1983

128.   Plaintiff re-alleges and incorporates by reference the allegations stated in ¶¶ 11 – 65 above.

129.   At no time relevant to this action did Mr. Castro pose an objective, immediate threat to the physical safety of Defendants or of any other person.

130.   At no time relevant to this action was Mr. Castro armed with a weapon.

131.   At no time relevant to this claim did Mr. Castro assault, batter or resist any officer of the law.

132.   It was not necessary to beat Plaintiff in order to prevent his escape.

133.   It was not necessary to beat Plaintiff in order to securely detain him.

134.   Mr. Castro was the subject of a brutal assault by Defendants.

135.   Plaintiff had the right under the Fourth Amendment to the United States Constitution to be free from unreasonable seizures in the form of excessive force.

136.   Defendants' actions constituted a seizure of Plaintiff's person.

137.   Defendants' actions subjected Mr. Castro to a deprivation of his rights as secured by the Fourth Amendment.

138.   Defendants acted under color of the statutes, ordinances, regulations and customs of the State of Georgia.

139.   Plaintiff was injured by Defendants' unconstitutional seizure in application of excessive force, which deprived Plaintiff of his rights secured by the Fourth Amendment.

140.   Defendants' use of force in the form of striking Plaintiff constituted excessive force, in excess of the limits imposed upon the use of force by officers by operation of the Fourth Amendment of the United States Constitution.

141.   The law was clearly established prior to March 26, 2010, that the Fourth Amendment's prohibition against unreasonable seizure is violated by the beating of a non-resisting suspect who, at the time of the beating was not posing an objective threat to a police officer.

142.   Defendants applied excessive force in the course of arresting Plaintiff.

143.   Defendants acted with reckless disregard of the risk of physical harm posed to Mr. Castro by their conduct, and were recklessly indifferent to the prospect that their actions would cause serious or further physical harm to the Plaintiff.

144.   Defendants' application of excessive force while making an unreasonable seizure of the Plaintiff was motivated by evil motive or intent, or was recklessly or callously indifferent to the Plaintiff's Fourth Amendment rights.

145.   As a direct and proximate result of Defendants' actions, Plaintiff suffered severe injury to, among other parts of his body, his left eye and nose.

146.   As a direct and proximate result of Defendants' actions, Plaintiff suffered fractures to his left eye socket and to his nose.

147.   As a direct and proximate result of Defendants' actions, Plaintiff suffered damage to a portion of his inferior rectus muscle.

148.   As a direct and proximate result of Defendants' actions, Plaintiff suffered restrictive movement in the upward gaze of his left eye.

149.   As a direct and proximate result of Defendants' actions, Plaintiff suffered double vision.

150.   Plaintiff suffered mental and emotional distress as a result of Defendants' actions

151.   Plaintiff will suffer from the pain and emotional harm of this incident in the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court award the following

relief:

a.     Compensatory damages;

b.     Punitive damages against Defendants, individually;

c.     Attorneys fees and costs of litigation pursuant to the provisions

of Title 28 of the United States Code and 42 U.S.C. § 1988;

d.     Pre-judgment and post-judgment interest on any award of

damages;

e.     Costs of litigation pursuant to O.C.G.A. § 13-6-11; and

g.     Such other and further relief as this Court deems just and

appropriate.

Respectfully submitted this 23rd day of August, 2010,

Daniel Werner
State Bar of Georgia No. 422070
daniel.werner@splcenter.org
Immigrant Justice Project
Southern Poverty Law Center
233 Peachtree Street, Suite 2150
Atlanta, Georgia  30303
Tel:  404-521-6700
Fax:  404-221-5857

Andrew H. Turner
(*pro hac vice application to be filed electronically*)
Alabama State Bar # ASB-8682-W84T
andrew.turner@splcenter.org
Samuel Brooke
(*pro hac vice application to be filed electronically*)
Connecticut State Bar # 426645
samuel.brooke@splcenter.org
Immigrant Justice Project
Southern Poverty Law Center
400 Washington Ave.
Montgomery, AL 36104
Tel:   334-956-8200
Fax:   334-956-8481

Trina Realmuto
(*pro hac vice application to be filed electronically*)
California State Bar # 201088
trina@nationalimmigrationproject.org
Paromita Shah
(*pro hac vice application to be filed electronically*)
Massachusetts State Bar # 641608
paromita@nationalimmigrationproject.org
National Immigration Project of the
National Lawyers' Guild
14 Beacon Street, Suite 602
Boston, MA 02108
Tel:   617-227-9727 x8
Fax:   617-227-5495

G. Brian Spears
State Bar of Georgia No. 670112
bspears@mindspring.com
1126 Ponce de Leon Avenue
Atlanta, Georgia 30306
Tel:  404-872-7086
Fax:  404-892-1128